IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00496-REB-MEH

DEBBIE BELL,

      Plaintiff,

v.

NOBLE WALLACE,
RAY RICE, and
DR. POLLACK,

      Defendants.

---

## RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed

by Defendants Rice and Pollack ("Motion") [filed August 14, 2007; doc #20], in response to the

Plaintiff's Complaint [doc #11].   Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L.Civ.R

72.1.C, the Motion has been referred to this Court for recommendation.   The Court recommends

that, for the reasons stated herein, the Motion be **granted in part and denied in part**.[1]

---

[1]Be advised that all parties shall have ten (10) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case
is assigned. Fed. R. Civ. P. 72.  The party filing objections must specifically identify those
findings or recommendations to which the objections are being made.  The District Court need
not consider frivolous, conclusive or general objections.  A party's failure to file such written
objections to proposed findings and recommendations contained in this report may bar the party
from a de novo determination by the District Judge of the proposed findings and
recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. §
636(b)(1).  Additionally, the failure to file written objections to the proposed findings and
recommendations within ten (10) days after being served with a copy may bar the aggrieved party
from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the
District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656,
659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

In response to Magistrate Judge Boland's May 4, 2007 order, Plaintiff filed a Second Amended Prisoner Complaint against Warden Noble Wallace, Dr. Nathan Pollack and Nurse Rae Rice on May 30, 2007, alleging claims of "deliberate indifference," "negligence" and "discrimination." [Complaint at 3.]  Essentially, Plaintiff claims that (1) Defendant Rice was deliberately indifferent to Plaintiff's needs by charging the Plaintiff excessive co-pays for medical treatment [Complaint at 5]; (2) Defendants were negligent in losing a pair of Plaintiff's personal eyeglasses valued at $399.00 and have refused to replace them or refund the cost [Complaint at 14];  and (3) Defendant Pollack retaliated against the Plaintiff by refusing to see her on two visits and by removing her medical restrictions, which included an allowance for a bottom bunk, and which caused the Plaintiff harm when she fell out of a top bunk, hit the edge of a desk and lost a tooth. [Complaint at 20.]

In response, Defendant Pollack, acting *pro se*, filed an "Answer" to the Complaint on July 17, 2007, denying that he refused to see the Plaintiff and providing explanations for any "removal" of her medicines or restrictions. [Answer, doc #18.]  Thereafter, on August 14, 2007, Defendants Pollack and Rice[2] together filed the within Motion to Dismiss ("Motion"), informing the Court that both Defendants are now represented by counsel.

## DISCUSSION

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197 (2007); *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1968-69 (2007).  Courts should look to the specific

---

[2]According to Defendants, Noble Wallace has not been served and has not waived service.

allegations of the complaint to determine whether they plausibly support a legal claim for relief-- that is -- a complaint must include "enough facts to state a claim for relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). The complaint must sufficiently allege facts supporting all of the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 2007 WL 2136579, *3 (10th Cir. July 26, 2007). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

Here, Defendant Pollack filed an Answer to the Complaint before the Rule 12(b)(6) Motion was filed; consequently, his motion would be more accurately characterized as a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). However, the courts apply the same standard for a Rule 12(b)(6) motion to a Rule 12(c) motion. *See Ramirez v. Dep't of Corrections*, 222 F.3d 1238 (10th Cir. 2000). The determination of a Rule 12(c) motion is confined to the pleadings and to any documents attached as exhibits to the pleadings, including the defendant's answer. *Oxendine v. Kaplan,* 241 F.3d 1272, 1275 (10th Cir.2001).

The allegations in Plaintiff's complaint "must be taken as true to the extent they are uncontroverted by [Defendants'] affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995). In addition, only well-pled facts, as opposed to mere conclusory allegations, must be accepted as true. *Id.* Because Plaintiff is proceeding *pro se,* I must construe her complaint liberally, holding it to less stringent standards than a formal pleading drafted by an attorney. *See Haines v.*

3

*Kerner,* 404 U.S. 519, 520 (1972).

Again, the Plaintiff alleges three claims against Defendants in this matter; the Court will address each claim in turn.

A.    Deliberate Indifference

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.' " *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)).  Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," *Estelle,* 429 U.S. at 105, or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993).  In other words, an Eighth Amendment violation exists only when the alleged deprivation is objectively sufficiently serious, and the prison official acts with deliberate indifference to an inmate's health or safety.  *Penrod*, 94 F.3d at 1405-06.

Here, Plaintiff claims that Defendant Rice was deliberately indifferent to her needs when she charged Plaintiff, a "chronic care" inmate, more than twice in one year for co-pays for medical visits. *See* Complaint at 5.  However, Plaintiff does not explain how the alleged excessive charges deprived her of any basic necessities or impinged on her safety.  Moreover, Plaintiff's allegations do not demonstrate that Defendant Rice acted with deliberate indifference to any serious illness or injury,

4

or exposed the Plaintiff to conditions that pose an unreasonable risk of serious damage to her future health (i.e. there is no indication that Plaintiff was denied medical care due to inability to pay the co-pays). In fact, an exhibit made part of Plaintiff's Complaint demonstrates that she was refunded at least one of the co-pays for which she filed a grievance. *See* Complaint at 8.

Defendants assert that Colorado law requires the CDOC to charge inmates a co-pay for medical care [*see* Colo. Rev. Stat. § 17-1-113], and that CDOC's co-pay policy has been upheld by the Colorado Court of Appeals. *See Negron v. Gillespie*, 111 P.3d 556, 558 (Colo. App. 2005). Any allegation that Defendant Rice failed to follow properly CDOC's co-pay policy does not rise to a constitutional claim cognizable under 42 U.S.C. § 1983. *See e.g. Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"); *see also Jones v. City & County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988).

For these reasons, Plaintiff's first claim for relief against Defendant Rice fails to state a claim upon which relief may be granted and should be dismissed.

B.     Negligence

To state a viable Section 1983 claim, a plaintiff must allege a violation of the United States Constitution or federal law. Allegations of negligence are not cognizable under Section 1983. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (deprivation of property as a result of negligent conduct does not implicate the due process clause of the Fourteenth Amendment); *see also Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).

Here, Plaintiff complains that her eyeglasses were taken to "medical" to repair a loose screw, and were subsequently lost. Complaint at 14. Plaintiff asserts that a CDOC regulation requires its

staff to replace or reimburse inmates for lost personal property.  *Id.*

Although Plaintiff fails to name the individual Defendants specifically in this second claim for relief, she alleges that Defendant Rice lost her eyeglasses in the description of her first claim for relief. *See* Complaint at 5.  However, to the extent Plaintiff claims that Defendant Rice was negligent in losing her eyeglasses, her claim must fail under *Daniels*.  As for her allegation that Defendants violated a CDOC regulation, her claim fails under *Davis, supra*.  Because Plaintiff's second claim for relief fails to state a viable claim under Section 1983, her second claim should be dismissed.

C.    Discrimination

Construing the Complaint liberally, the Court finds that Plaintiff's third claim for relief is actually a claim for retaliation, rather than for discrimination, against Defendant Pollack.[3]  Plaintiff alleges that "[s]ince I have written grievances on [sic] Dr. Pollack he refused to see me on two visited [sic], pulled all my restrictions like <u>lower bunk</u> . . . stoped [sic] all my medication for chronic pain and arthritis which cost [sic] me to have muscle spasms and fall off top bunk."  Complaint at  20 (emphasis in original).

Because Defendant Pollack filed an Answer before the Motion to Dismiss was filed, the Motion is appropriately characterized as a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).  Consequently, the Court may analyze both the Complaint and the Answer, including any attached exhibits. *See Oxendine,* 241 F.3d at 1275.

Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his or her constitutional rights. *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir. 1990).  This

---

[3]In the Motion to Dismiss, Defendants incorrectly construed the claim as a violation of the equal protection clause, and argued that the claim should be dismissed on that basis.

6

principle applies even where the action taken in retaliation would be otherwise permissible. *Id.* at 948 ("it is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper"). Of course, it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because she has engaged in protected activity. *Id.* Accordingly, a plaintiff must prove that "but for" the retaliatory motive, the incidents to which she refers would not have taken place. *Smith*, 899 F.2d at 949-50. An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights. *Frazier v. Dubois,* 922 F.2d 560, 562 n. 1 (10th Cir. 1990) (emphasis added).

The presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. *See Smith*, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with the "only means available to him--circumstantial evidence of the suspicious timing of his discipline, and coincidental transfers of his witnesses and assistants"); *see also McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation"); *Harris v. Fleming*, 839 F.2d 1232, 1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation).

According to the allegations and exhibits attached to her Amended Complaint, the Plaintiff

7

filed a grievance against Defendant Pollack on September 16, 2006 [Complaint at 37], approximately a month after undergoing a complete hysterectomy following a diagnosis of cervical cancer. Complaint at 34. The grievance alleged that Dr. Pollack refused to prescribe medication for a yeast infection that resulted from the surgery, refused to renew medication for bed-wetting, and "did nothing" to remedy her hemorrhoids. *Id.* at 37. Following the grievance, Plaintiff alleges that she requested a medical appointment regarding the yeast infection on October 19, 2006, and filed another request on November 20, 2006 saying that still nothing had been done to schedule an appointment regarding the infection. Complaint at 24. Someone in the "Dispensary" responded to the November request, directing Plaintiff to buy Monastat over the counter. *Id.* Notably, Plaintiff alleged in her September grievance that she had been instructed in the same manner after surgery, but had no money in her account to pay for the medication. *Id.* at 37.

On or about December 14, 2006, Plaintiff filed another request for an appointment saying that some of her medication had been renewed for only one month and some not at all. Complaint at 25. She also complained of "muscle spasms" in her back and "chronic pain." *Id.* The Dispensary responded on December 19, 2006 setting an appointment for "next week." *Id.* However, when the week of "12-17 thru 12-23" passed, Plaintiff wrote a note to Warden Butterfield complaining not only that Dr. Pollack had refused to see her and to renew her medication, but also she had apparently received a call from "medical" saying that although she had an appointment scheduled that day with Dr. Pollack, he "didn't want to see [her] today." Complaint at 30. Thereafter, Plaintiff was scheduled for an appointment on January 2, 2007, when she reminded the doctor of her lower bunk restriction and was told he wanted to "run tests." Complaint at 21. Plaintiff claims that, two weeks later on January 16, 2007, after experiencing a muscle spasm, she fell from the top bunk, hurt her

8

knee, hit the edge of a desk and lost a front tooth. *Id.*; *see also* Complaint at 32-33.

In response, Defendant Pollock asserts in his Answer that Plaintiff's only "chronic" ailment is asthma, and that "early in 2007, after careful measurement of breathing flow and volumes," he determined that Plaintiff's asthmatic condition was not present and suspended some of her medications at that time. Answer at 2. In addition, Defendant contends that he has "never refused to see a patient in any setting," that the Plaintiff's condition was "never a medical emergency," and that during lock-downs or shake-downs, the routine clinic schedule is suspended or delayed "(as happened in some of the instances she cites as [his] 'refusal' to see her)." *Id.* He also states that, "after clinical examination showed me no clinical sign of right knee instability, I removed the medical recommendation for a lower bunk as not necessary for her survival or function (and encouraged her to use common-sense caution)". *Id.* Defendant maintains that "over-the-counter medications (such as Monistat for yeast vaginitis)" are "adequate for her conditions," as well as "readily available, less expensive and safer than prescription drugs for the same conditions." *Id.* at 3. Defendant determined that, since Plaintiff "had employment in the prison for which she was paid some money," his advice to purchase non-prescription medication was "appropriate and realistic." *Id.* Finally, Defendant asserts that while Plaintiff "states I had refused to give her medication" in her September 16, 2006 grievance, "she does not include a copy of my prompt response to that and any other grievance she forwarded to me." *Id.* He alleges that he determined not to renew her prescription for "her life-long enuresis (bed-wetting)" since it was "not necessary for maintenance of life or function," and since there had been a "widespread abuse of that drug." *Id.* For all of these, as well as other, contentions, Defendant provides no factual or documentary support.

Here, the Court finds that the Amended Complaint sufficiently alleges facts supporting the

elements necessary to establish an entitlement to relief under a retaliation theory. *See Lane*, 2007 WL 2136579, *3 (10th Cir. July 26, 2007). Taking the Plaintiff's allegations as true, just over a month after she filed the September 16, 2006 grievance against Defendant Pollack, he failed or refused to respond to her October 19, 2006 request for an appointment regarding the Plaintiff's ongoing yeast infection. *See e.g. Ramirez v. Oklahoma Dep't of Mental Health,* 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a one and one-half month period between protected activity and a negative action may establish causation). Thereafter, the Plaintiff alleges a number of instances in which she was refused medical appointments, prescription renewals and medical restrictions. The Court finds that the Plaintiff's Amended Complaint has stated "enough facts to state a claim for relief that is plausible on its face." *See TON Services, Inc.,* 493 F.3d at 1236.

D.     Qualified Immunity

Plaintiff does not clearly designate whether the Defendants are being sued in their official or individual capacities; however, her pleadings indicate she is seeking monetary damages as her sole remedy. In an official capacity suit against a local government official, the real party in interest is not the named official, but the local governmental entity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Myers v. Oklahoma County Bd. of County Com'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998). Defenses such as qualified immunity or immunity from compensatory damages are not available to the political subdivision. *See Owen v. City of Independence,* 445 U.S. 622 (1980).

This Court must analyze both the substance of the pleadings and the course of the proceedings to determine whether the suit is for official or individual liability. *See Pride v. Lamb*, 997 F.2d 712, 715 (10th Cir. 1993). Plaintiff's request for monetary damages, and not injunctive and declaratory relief, is not a strong indicator as to whether the suit seeks both personal and official liability. *Cf. id.*

10

However, the Defendants have raised a qualified immunity defense, which would support a finding that the Plaintiff's suit as to these two Defendants is an individual capacity suit. *See id.* at 715-16. Additionally, "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). State law, as reflected in statutes, ordinances, regulations, city charters or other similar compilations, determines who has "final policy making authority." *Id.* Nothing in the record evidences that Defendants Rice and Pollack have final policy making authority. Accordingly, a determination that the Plaintiff has sued these Defendants solely in their individual capacities is warranted.

With regard to Plaintiff's claims, the Defendants argue that they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> In evaluating a claim for qualified immunity, the court must first determine whether, considered in the light most favorable to the plaintiff, the facts alleged state the violation of a [statutory or] constitutional right. . . . If so, the court must go on to determine whether the [statutory or] constitutional right was clearly established at the time of injury. . . . If the answer to either of these questions is no, the defendant is entitled to qualified immunity.

*PETA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1207 (10th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

Here, the Court finds that Plaintiff's Amended Complaint states a claim of retaliation under 42 U.S.C. § 1983 against Defendant Pollack. Thus, the Court must now determine whether

11

Plaintiff's right to be free from retaliation was clearly established at the time of her injury. *See id.*

According to the Complaint, Plaintiff's alleged injuries occurred from approximately September 2006

through February 2007 (or later).  In 1990, the Tenth Circuit held that prison officials may not

retaliate against an inmate for exercising his constitutional right to access the courts, even if the

actions would otherwise be permissible. *See Smith*, 899 F.2d at 947; *see also Purkey v. Green*, 28

Fed. Appx. 736, 746 (10th Cir. 2001) (because a prisoner must first file a grievance in order to

ultimately gain access to courts, punishing him for actually filing grievances would state claims for

violations of access to courts and the First Amendment).  Clearly, the law providing prisoners the

right to be free from retaliation for exercising their constitutional rights was clearly established at the

time of Plaintiff's injury (*see Hawkinson v. Montoya*, 479 F. Supp.2d 1164, 1175 (D. Colo. 2007)),

and thus, to the extent the motion seeks to dismiss Plaintiff's third claim for relief based on qualified

immunity, the Court recommends that the Motion be denied.

## CONCLUSION

Based on the foregoing, and the entire record herein, I do hereby **recommend**[4] that the

District Court grant in part and deny in part the Defendants' Motion to Dismiss [filed August 14,

---

[4]The parties are advised that they shall have ten (10) days after service hereof to serve and
file any written objections in order to obtain reconsideration by the District Judge to whom this
case is assigned. FED. R. CIV. P. 72.  The party filing objections must specifically identify those
findings or recommendations to which the objections are being made.  The District Court need
not consider frivolous, conclusive or general objections.  A party's failure to file such written
objections to proposed findings and recommendations contained in this report may bar the party
from a de novo determination by the District Judge of the proposed findings and
recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. §
636(b)(1).  Additionally, the failure to file written objections to the proposed findings and
recommendations within ten (10) days after being served with a copy may bar the aggrieved party
from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the
District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656,
659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

2007; doc #20] as set forth herein.

Dated at Denver, Colorado, this 18th day of September, 2007.

BY THE COURT:


s/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge